UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DICERNA PHARMACEUTICALS, INC., <br><br> Plaintiff <br><br> v. <br><br> ALNYLAM PHARMACEUTICALS, INC., <br><br> Defendant. | Civil Action No. 1:17-cv-11466-NMG |

**DICERNA PHARMACEUTICALS, INC.'S OPPOSITION TO ALNYLAM
PHARMACEUTICALS, INC.'S MOTION TO DISMISS THE FIRST AMENDED
COMPLAINT, OR IN THE ALTERNATIVE, TO STAY PROCEEDINGS PENDING
RESOLUTION OF THE UNDERLYING STATE COURT LITIGATION**

# TABLE OF CONTENTS

**Page**

I.  Introduction..............................................................................................................1

II.  Factual Background ...............................................................................................2

III.  Legal Standard ......................................................................................................4

IV.  Dicerna States a Claim For Which RELIEF Can Be Granted .............................5

    A.  Dicerna Pleads A Legally Valid Claim For Attempted Monopolization............... 5

        1.  Dicerna Alleges a Proper Antitrust Market ............................................. 6

        2.  Dicerna Properly Alleges That There Is a Dangerous Probability Alnylam Will Acquire Monopoly Power.................................................................. 8

    B.  Alnylam's Attempt To Monopolize The Market Is Not Immune From Antitrust Liability Under The Noerr-Pennington Doctrine ................................. 11

        1.  Dicerna's Claim Is Based On More Than Sham Litigation..................... 11

        2.  The Amended Complaint Establishes a Plausible Claim Of Sham Litigation................................................................................................. 13

        3.  Alnylam Cannot Use The State Court Protective Order As A Shield Against Disclosure Of Facts Learned In Discovery And A Sword To Challenge The Lack Of Disclosure of Those Facts ................................. 16

V.  This Litigation Should Not Be Stayed Pending Resolution of the State Court Litigation.............................................................................................................18

VI.  Conclusion ..........................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abarca Health, LLC v. PharmPix Corp.*, 915 F. Supp. 2d 210 (D.P.R. 2012).......................15-16

*Aldridge v. A.T. Cross Corp.*, 284 F.3d 72 (2002)..........................................................16

*Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323 (D. Vt. 2010)......................................5

*American Home Products Corporation*, FTC No. C-3557 (1995) ................................................7

*Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846, 2012 U.S. Dist. LEXIS
   67102 (N.D. Cal. May 14, 2012) .....................................................................................6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..............................................................................5

*Babcock & Wilcox Co. v. United Technologies Corporation.* 435 F.2d 1249 (N.D.
   Ohio 1977) ......................................................................................................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................4

*Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007) ...........................10-11

*Caldera, Inc. v. Microsoft Corp.*, 87 F. Supp. 2d 1244 (D. Utah 1999) .......................12

*Consolidated Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252 (2d Cir. 1989)............................8

*CVD, Inc. v. Raytheon, Co.*, 769 F.2d 842 (1st Cir. 1985) .............................................14

*Disco Vision Assocs. v. Disc Mfg. Co.*, 42 U.S.P.Q. 2d (BNA) 1749 (D. Del.
   1997) ................................................................................................................................7

*Double D Spotting Serv., Inc. v. Supervalu, Inc.,* 136 F.3d 554 (8th Cir. 1998) .............................5

*In Re Epipen (Epinephrine Injection, USP) Marketing, Sales Practices and
   Antitrust Litigation*, 2017 WL6524839 (D. Kan. December 21, 2017)..................................12

*Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design,*
   244 F.3d 521 (6th Cir. 2001) ........................................................................................5

*Glaxo PC*, 119 F.T.C. 815 (1995)........................................................................................7

*Glaxo Wellcome PLC*, FTC No. C-3990 (2001)....................................................................7

*Goss Int'l Ams., Inc. v. Man Roland, Inc.* ............................................................................9

*Honeywell Consumer Prods., Inc. v. Windmere Corp.*, 993 F. Supp. 22 (D. Mass.
   1998) ...............................................................................................................................13

*Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 73689 (N.D. Cal. Jan. 5, 2008) ..................................................................................................6

*LePage's Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003) .........................................9

*In re Loestrin 24 FE Antitrust Litig.*, 814 F.3d 538 (1st Cir. 2016) ................4

*Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs*, 850 F.2d. 904 (2d Cir. 1988) ..........................12

*In re Pabst Licensing, GmbH Patent Litig.*, 2000 U.S. Dist. LEXIS 12076 (E.D. La. 2000) ..................................................................................................7

*Pfizer, Inc.*, FTC No. C-3957 (2000) ..............................................................7

*Professional Real Estate Investors, Inc. v. Columbia Pictures Int'l, Inc.*, 508 U.S. 49 (1993) ..........................................................................................13

*In re Prograf Antitrust Litigation*, 2012 WL 293850 (D. Mass. Feb. 1, 2012) ...........................15

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430 (3d Cir. 1997) ................5

*Rambus Inc. v. FTC*, 522 F.3d 456 (D.C. Cir. 2008) ......................................6

*Skinder-Strauss Assocs. v. Mass. Continuing Legal Educ., Inc.*, 870 F. Supp. 8 (D. Mass. 1994) ..................................................................................................15

*Sony Computer Entertainment Am., Inc. v. NASA Elecs. Corp.*, 249 F.R.D. 378 (S.D. Fla. 2008) ..................................................................................................18

*Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993) ....................5, 9-10

*United States v. Aluminum Co. of Am.*, 148 F.2d 416 (2d Cir. 1945) .............8

*United States v. Automobile Manufacturers Association,* 307 F. Supp. 617 (C.D. Cal. 1969) ..................................................................................................8

*United States v. General Motors Corporation*, 6 Trade Reg. Rep. (CCH) Par. 45,093 at 44,661 (D. Del. 1993) ..................................................................................7

*United States v. Lockheed Martin & Northrup Grumman*, No. 98-cv-00731 (D.D.C. Mar. 23, 1998) ..................................................................................7

**Other Authorities**

FED. R. CIV. P. 12(b)(6) ..............................................................1, 4, 15-16

Plaintiff Dicerna Pharmaceuticals, Inc. ("Dicerna") respectfully submits this memorandum in opposition to Defendant Alnylam Pharmaceuticals, Inc.'s ("Alnylam") Motion to Dismiss Dicerna's First Amended Complaint [ECF No. 22] ("AC" or "Amended Complaint") under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, to stay this litigation pending resolution of the underlying state court litigation between the parties [ECF No. 23] ("MTD") and related memorandum of law [ECF No. 24] ("MOL").

## I.    INTRODUCTION

With over $1 billion in cash, Alnylam is by far the dominant firm in the market for the research and development of RNA interference ("RNAi") therapies. Dicerna, with just a fraction of the resources of Alnylam, is competing against Alnylam for the research and development of an RNAi-based treatment for Primary Hyperoxaluria Type 1 ("PH1"), Primary Hyperoxaluria Type 2 ("PH2"), and Primary Hyperoxaluria Type 3 ("PH3") (collectively, "PH"). No other firms are developing such treatments, and it takes many years and significant resources to develop an FDA-approved treatment.

Alnylam's reaction to Dicerna's competitive innovations has been to pursue a baseless state court lawsuit against Dicerna and publicize false allegations impugning the validity of Dicerna's ownership of its competing technology, with the intent of drying up Dicerna's sources of funding and potential research partners, among other competitive harms that threaten to leave Alnylam with a monopoly in the market, regardless of the lack of merit to its allegations. As set forth in detail below, Alnylam's anti-competitive tactics include the filing and prosecution of grossly overbroad trade secret claims designed to undermine Dicerna's ability to develop its competing technology, which Alnylam then falsely publicized and continues to trumpet today. Alnylam's anti-competitive conduct has impaired Dicerna's ability to compete, which threatens

to allow Alnylam to monopolize the market and to deny therapeutic choice and a necessary

medical treatment options to chronically-ill patients suffering from PH1.

## II.    FACTUAL BACKGROUND

Dicerna is a biopharmaceutical research company with a focus on research, discovery and

development of innovative therapies to stop or turn off destructive disease processes by silencing

genes underlying those processes.  (AC ¶ 3.)  Dicerna has an extensive history of pioneering

innovation in the area of RNAi, a biologic process used in the development of specific and

powerful therapies to treat rare diseases, chronic liver diseases, cardiovascular disease, and viral

liver infectious diseases.  (*Id.*)  Alnylam also develops RNAi therapies to treat rare diseases.

(*Id.* ¶ 4.)

Dicerna and Alnylam compete to hire the same scientists, and also for the same

investment dollars and partnerships with other pharmaceutical companies to support their

research and development efforts.  (*Id.* ¶ 5.)  Dicerna and Alnylam vigorously also compete in

their respective efforts to research and develop pharmaceutical therapies to treat particular

diseases, including RNAi-based therapies for PH.  (*Id.*)

Rather than compete on the merits of the parties' respective abilities to innovate, Alnylam

is using an objectively baseless, sham lawsuit and false public announcements attacking the

legitimacy of Dicerna's technology in a bad faith effort to put a cloud over and undermine

Dicerna's competitive developments, thereby impairing its only competition in the market for the

research and development of RNAi-based treatment for PH1.  (*Id.* ¶¶ 6-7.)  As set forth in more

detail below, the Amended Complaint alleges that Alnylam purposefully filed a grossly

overstated trade secrets claim, with the knowledge that many of the "secrets" it claimed to own

were, in fact, in the public domain, including disclosures in Alnylam's own public patent filings.

(*Id.* ¶¶ 52-69.)  Alnylam failed to reasonably assess the public disclosures of its purported "trade

secrets" before launching its competitively harmful attack on Dicerna's technology, and it ignored the fact that the company from whom Alnylam claimed to have purchased its "trade secrets" in fact permitted its former scientists to leave with and use their information in seeking new employment – including employment with Dicerna.  (*Id.* ¶¶ 31-45, 59.)  Alnylam publicized and continues to publicize its false and intentionally overstated claim, including a representation that it intended to stop what it claimed to be Dicerna's misappropriation of Alnylam's trade secrets in developing its own technology.  (*Id.* ¶¶ 73-74.)  Instead, Alnylam purposefully avoided putting its unsupported, but very damaging, claims to the test in state court for as long as possible.  (*Id.*)  After years of litigation, Alnylam has now been forced to walk away from a considerable amount of its initial claimed trade secrets list, avoiding ever putting its original allegations to the test, while continuing to publicize those allegations to Dicerna's ongoing competitive harm without any correction.  (*Id.* ¶¶ 77-80.)

Alnylam's anticompetitive conduct also threatens to block the advancement of the only research and development advancements of an RNAi-based treatment for PH2 and PH3.  (*Id.*)  PH1, PH2, and PH3 are rare disorders of metabolism that can result in severe kidney damage, and potentially more widespread damage to bodily organ systems.  (*Id.* ¶ 8.)  There are no approved pharmaceutical therapies for PH, leaving frequent renal dialysis as palliative care and combined liver/kidney transplant as the only potentially curative option.  (*Id.*)

It takes many years and significant research and resources to develop an approved medical treatment for PH.  Dicerna and Alnylam are the only companies publicly identified as developing proprietary RNAi-based treatments for PH1.  (*Id.* ¶ 9.)  Dicerna alone is developing a treatment that will address all PH disease states; Alnylam's treatment will not address PH2 or PH3.  (*Id.*)  Because they are competitors, Alnylam is well-aware that Dicerna relies on securing

partnerships, alliances, and licensing deals with other pharmaceutical companies to continue to fund its mission of continuing research and development into potentially life-saving therapeutics. (*Id.* ¶ 70). Alnylam is also well-aware that threatening, filing, and continuing litigation attacking the validity of Dicerna's technology would have a severe chilling effect on Dicerna's ability to secure partnerships, alliances, or licensing deals. (*Id.* ¶71.) Alnylam has been able to cast a cloud over Dicerna merely by publicizing and posting its State Court Litigation Complaint falsely asserting that Dicerna misappropriated its trade secrets. (*Id.* ¶82). This cloud has damaged, and will continue to damage, Dicerna and has impeded its ability to develop a pharmaceutical treatment for PH, regardless of the outcome of litigation after trial. (*Id.*) As Dicerna is Alnylam's only viable and active competitor for the research and development of RNAi-based treatment for PH, Alnylam's misconduct, if unchecked, threatens to monopolize the market for the research and development of a PH1 treatment and will effectively block the only treatment option being developed for PH2 and PH3. (*Id.* ¶ 11.)

## III.   LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint but does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. *See In re Loestrin 24 FE Antitrust Litig.*, 814 F.3d 538, 549 (1st Cir. 2016). A complaint must be liberally construed, with all well-pleaded facts assumed as true, and all reasonable inferences drawn in the plaintiff's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If the factual allegations plausibly suggest the plaintiff is entitled to relief, a motion to dismiss should be denied. *Id.* The "plausibility" standard "does not impose a probability requirement; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence". *Id* "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.    DICERNA STATES A CLAIM FOR WHICH RELIEF CAN BE GRANTED

Alnylam claims the Amended Complaint fails to allege sufficient facts regarding the composition and dynamics of the relevant market.  (MOL pp. 7-14.)  Because market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market. *See, e.g., Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design,* 244 F.3d 521, 531 (6th Cir. 2001) ("Market definition is a highly fact-based analysis that generally requires discovery") (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 482 (1992)); *Double D Spotting Serv., Inc. v. Supervalu, Inc.,* 136 F.3d 554, 560 (8th Cir. 1998) (noting that "courts are hesitant to dismiss antitrust actions before the parties have had an opportunity for discovery"); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.,* 124 F.3d 430, 436 (3d Cir. 1997) (explaining that "in most cases, proper market definition can be determined only after a factual inquiry into the commercial realities faced by consumers"). Stated differently, "dismissals at the pre-discovery, pleading stage remain relatively rare and are generally limited to" certain types of "glaring deficiencies," such as failing to even allege a relevant market.  *Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 339 (D. Vt. 2010).

### A.    Dicerna Pleads A Legally Valid Claim For Attempted Monopolization

Sherman Act Section 2 proscribes "attempt[s] to monopolize."  15 U.S.C. § 2. Establishing attempted monopolization requires proof "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power."  *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).

1.    Dicerna Alleges a Proper Antitrust Market

Dicerna alleges that Alnylam is attempting to monopolize the "market for the research and development of RNAi-based treatment for PH, inclusive of the technology used in the preparation and evaluation of RNAi products for treating PH." (AC ¶ 86.)  The Amended Complaint also alleges that there are high barriers to enter the relevant market, including significant investment capital and years of research and development (*id.* ¶ 89), and that there are no other clinically approved pharmaceutical therapies for the treatment of PH and no other treatments that are reasonably interchangeable with RNAi-based treatment for PH.  (*Id.* ¶ 89.) For purposes of this motion, these allegations regarding the relevant market must be accepted as true.

In its MOL, Alnylam argues that the market Dicerna has defined is legally invalid because neither Dicerna nor Alnylam currently have a product for sale.  (MOL pp. 7, 13, 18.) This argument is based upon a fundamental mischaracterization of the market that is defined in the Amended Complaint.  The Amended Complaint does not define the relevant market as the market for the sale of RNAi-based therapies for PH, but rather as the "the market *for the research and development* of RNAi-based treatment for PH, inclusive of the technology used in the preparation and evaluation of RNAi products for treating PH."  (AC ¶ 86 (emphasis added).)

Courts and other antitrust authorities have repeatedly recognized research and development markets similar to the one alleged here.  *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846, 2012 U.S. Dist. LEXIS 67102, at *19-23 (N.D. Cal. May 14, 2012); *Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 73689, at *2-8 (N.D. Cal. Jan. 5, 2008); *Rambus Inc. v.  FTC*, 522 F.3d 456, 462, 467 (D.C. Cir. 2008) (rejecting claim that "Rambus unlawfully monopolized four technology markets in which its patented technologies compete with alternative innovations to address technical issues related to DRAM design—markets for latency,

burst length, data acceleration, and clock synchronization technologies"); *In re Pabst Licensing, GmbH Patent Litig.*, 2000 U.S. Dist. LEXIS 12076, at *1 (E.D. La. 2000) (rejecting defendants' argument that there can be no such thing as a technology market and denying motion to dismiss); *Disco Vision Assocs. v. Disc Mfg. Co.*, 42 U.S.P.Q. 2d (BNA) 1749, 1751 (D. Del. 1997) (concluding that plaintiff sufficiently alleged three distinct technology markets relating to CD technology).

Moreover, the Department of Justice Antitrust Division ("DOJ") and Federal Trade Commission ("FTC") consistently recognize the potential for anticompetitive conduct in markets for the research and development of products to be sold in the future. *See, e.g.*, *Glaxo Wellcome PLC*, FTC No. C-3990 (2001) (recognizing a market for research and development related to irritable bowel syndrome, solid tumors, migraine headaches, and the herpes vaccine); *Pfizer, Inc.*, FTC No. C-3957 (2000) (concerning competition between two firms who were most advanced in the FDA approval process for EGFr-tk inhibitor for the treatment of solid tumor cancers); *Glaxo PC*, 119 F.T.C. 815 (1995) (recognizing market for research and development of an oral treatment for migraine headaches); *American Home Products Corporation*, FTC No. C-3557 (1995) (concerning competition between two of only three firms at or near the clinical trial stage for vaccines for rotavirus); *United States v. Lockheed Martin & Northrup Grumman*, No. 98-cv-00731 (D.D.C. Mar. 23, 1998) (recognizing market for innovation related to development of stealth technology for military aircraft); *United States v. General Motors Corporation*, 6 Trade Reg. Rep. (CCH) Par. 45,093 at 44,661 (D. Del. 1993) (concerning risk of reduced technological innovation in the market for the design and production of automatic transmissions for medium and heavy duty commercial vehicles).

Indeed, courts have frequently recognized that antitrust issues can be triggered when a rival engages in anticompetitive conduct during the stage when the competing firms are merely preparing to sell a product. *See, e.g.*, *Consolidated Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252 (2d Cir. 1989) (concluding that acquiring stock of a competitor that threatens the target's efforts to cut costs could be antitrust problem); *see also, e.g.*, *United States v. Aluminum Co. of Am.*, 148 F.2d 416, 427 (2d Cir. 1945) (finding that antitrust laws were designed to protect rivalry, which "is a stimulant to industrial progress"). In *United States v. Automobile Manufacturers Association*, the court approved a consent decree in a case where the government alleged that automobile manufacturers had engaged in an unlawful "conspiracy to eliminate competition in research, manufacture, and installation of motor vehicle air pollution control equipment." 307 F. Supp. 617 (C.D. Cal. 1969). Another court recognized "a market for research and development of power generation equipment" in *Babcock & Wilcox Co. v. United Technologies Corporation*. 435 F.2d 1249, 1276-77 (N.D. Ohio 1977).

Accordingly, Alnylam's argument that Dicerna has failed to properly plead a relevant antitrust market has no basis in law or fact.

2.    Dicerna Properly Alleges That There Is a Dangerous Probability Alnylam Will Acquire Monopoly Power

In the Amended Complaint, Dicerna properly alleges that there is a dangerous probability that Alnylam will acquire monopoly power in the research and development market for RNAi-based therapies for PH. Specifically, Dicerna alleges because Alnylam "is using sham litigation and bad faith public pronouncements of false allegations impugning Dicerna's proprietary competitive therapies to unlawfully attempt to impair and/or exclude its only competitor for the development of RNAi-based treatment of PH and thereby obtain a monopoly in the market." (AC ¶ 96.) In addition, Dicerna expressly alleges that "[a]s a result of Alnylam's anticompetitive

conduct and the high barriers to entry into this product market for other pharmaceutical companies, there is a dangerous probability that Alnylam will obtain a monopoly in the market for RNAi-based treatment for PH1 and block development of the only prospective treatment for PH2 and PH3 patients if its anti-competitive conduct goes unchecked."  (*Id.* ¶ 98.)

Alnylam argues that Dicerna's allegations about its market power are insufficient because RNAi-based therapies for PH are not yet for sale and, thus, its share of that "market" must be zero.  Once again, Alnylam's argument is based on a total mischaracterization of the research and development market alleged in the Amended Complaint.  Dicerna alleges that it and Alnylam are the only firms competing *to develop* RNAi-based therapies for PH; therefore, Alnylam will control 100% of that market if Alnylam's anticompetitive conduct goes unchecked. (AC ¶¶ 86-89.)  This is the definition of monopoly power and the fundamental purpose of the U.S. antitrust laws—to promote fair competition for the benefit of consumers.  *See Spectrum Sports*, 506 U.S. at 447 ("The law directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself."); *LePage's Inc. v. 3M*, 324 F.3d 141, 159 (3d Cir. 2003) ("When a monopolist's actions are designed to prevent one or more new or potential competitors from gaining a foothold in the market by exclusionary, *i.e.*, predatory conduct, its success in that goal is not only injurious to the potential competitor but also to competition in general.").  None of the cases cited by Alnylam support its argument to the contrary.  *See, e.g.*, *Goss Int'l Ams., Inc. v. Man Roland, Inc.* (standing only for the proposition that a firm must compete in the relevant market in order to be liable on a claim of attempted monopolization of that market).

Like the inquiry into pleading a relevant market, the question of whether a dangerous probability of success is pled is a "particularly fact-intensive inquiry," in which market share is

just one factor, that "typically should not [be] resolve[d] … at the pleading stage unless it is clear on the face of the complaint that the dangerous probability standard cannot be met as a matter of law." *See Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 318 (3d Cir. 2007). Whether a firm has a "dangerous probability of obtaining monopoly power" requires consideration of the firm's ability to lessen or destroy competition in the relevant market. *See Spectrum Sports*, 506 U.S. at 456. The question is one of "proximity and degree and the elements of an attempted monopolization claim are frequently interdependent so that proof of one may provide circumstantial evidence or permissible inferences of other elements." *Broadcom*, 501 F.3d at 318.

Here, the Amended Complaint alleges that a competitor is using anti-competitive tactics to drive its only other competitor out of the market. The fact that the market is in its infancy does not mean that it is not subject to the antitrust laws. Dicerna relies on securing partnerships, alliances, and licensing deals with other pharmaceutical companies to compete in the market for the research and development of RNAi-based therapies for PH. (AC ¶70). The Amended Complaint alleges that Alnylam's threatening, filing, continuing and publicizing baseless litigation against Dicerna has a severe chilling effect on Dicerna's ability to secure partnerships, alliances, or licensing deals to fund such research and development. (*Id.* ¶71.) In short, Alnylam has been able to cast a cloud over Dicerna merely by publicizing and posting its State Court Litigation Complaint falsely asserting that Dicerna misappropriated its trade secrets. (*Id.* ¶82). This cloud has damaged, and will continue to damage, Dicerna and has impeded its ability to develop a pharmaceutical treatment for PH, regardless of the outcome of litigation after trial. (*Id.*) Dicerna's allegations must be accepted as true at this stage and Alnylam's motion should be denied.

**B.    Alnylam's Attempt To Monopolize The Market Is Not Immune From Antitrust Liability Under The Noerr-Pennington Doctrine**

1.    <u>Dicerna's Claim Is Based On More Than Sham Litigation</u>

Alnylam falsely contends that "[t]he only wrongful act here alleged by Dicerna is the filing of a lawsuit by Alnylam that Dicerna accuses as a sham."  (MOL p. 9.)  Alnylam purposefully omits from its description of Dicerna's claim – and fails to address in any way – the additional allegation that Alnylam has unlawfully attempted to monopolize the market through publication of false representations impugning Dicerna's ownership of and right to commercially pursue technology developments in competition with Alnylam.  *See, e.g.,* AC ¶ 7 (through prosecution of sham litigation and public announcements falsely alleging Dicerna misappropriated Alnylam trade secrets, in order to impede Dicerna's ability to effectively partner with other pharmaceutical companies in research and development projects, raise financing or investment monies necessary to pursue its own developments and otherwise effectively compete with Alnylam, despite having no objectively reasonable or other good faith basis to allege that Dicerna has used any Alnylam confidential or proprietary information.); ¶ 11 (Alnylam's sham litigation and bad faith public disclosure of unsupported allegations attacking the integrity and validity of Dicerna's research and development of a competing therapy constitute bad faith attempts by Alnylam to block Dicerna's research and development of RNAi-based treatment for PH.); ¶ 73 (Alnylam … issued a press release [and] posted an electronic copy of its Complaint in the State Court Litigation to its website, where it remains accessible today.  The press release included a quotation of Alnylam's President and Chief Operating Officer suggesting, falsely, that Dicerna had refused to cooperate with Alnylam's requests to investigate Alnylam's accusation of theft of trade secrets.); ¶ 74 (While the press release claims that by its suit "Alnylam seeks to stop misappropriation by Dicerna of the company's confidential, proprietary, and trade secret

information related to, among other things, GalNAc conjugate technology," in fact, Alnylam sought no preliminary relief …   Instead, Alnylam has sought repeated delays to the case schedule and permitted the State Court Litigation to linger in order to maximize its chilling effect on Dicerna's competitive developments.); and ¶ 107 (Alnylam has willfully engaged … in … bad faith State Court Litigation and related bad faith disparagement of Dicerna, to eliminate its only competition in this market).)

Alnylam's refusal to even acknowledge Dicerna's allegations tying Alnylam's prolonged and false publications impugning Dicerna's ownership of and right to pursue its RNAi technology, is telling.  Federal courts "have recognized that deceptive speech can support Sherman Act claims because 'in some cases, such defamation, which plainly is not competition on the merits, can give rise to antitrust liability, especially when it is combined with other anticompetitive acts.'"  *In Re Epipen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation*, 2017 WL6524839, at *12 (D. Kan. December 21, 2017) (quoting *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 109 n. 14 (3d Cir. 2010); *see, also, Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs*, 850 F.2d. 904, 916 (2d Cir. 1988) (reversing dismissal of a Sherman Act § 2 claim and finding defendant's publication of an allegedly false letter touting its product's superiority and telling pharmacists not to dispense a generic drug were sufficient "to go forward with the discovery process to substantiate its claim"); *Caldera, Inc. v. Microsoft Corp.*, 87 F. Supp. 2d 1244, 1249 (D. Utah 1999) (holding that alleged misleading statements about the plaintiff's product viewed with other anticompetitive behavior supported a Sherman Act § 2 claim sufficient to survive summary judgment).

Regardless of the fact that Alnylam may intend to dispute Dicerna's false disparagement allegations, they must be accepted as true in resolving this Motion.  Moreover, its failure to

address them in any way concedes that this factual dispute cannot be resolved as a matter of law

and must await resolution at trial.

                  2.       The Amended Complaint Establishes a Plausible Claim Of Sham
                            Litigation

Alnylam recognizes that there is an exception to the so-called *Noerr-Pennington*

immunity doctrine permitting antitrust claims where the underlying petitioning activity was a

"sham." (MOL pp. 14-15). The standard to determine whether petitioning activity is a sham is a

two-step assessment whether the activity was (1) objectively baseless and (2) the petitioner's

subjective motivation was to interfere with the plaintiff's ability to compete. *See Professional*

*Real Estate Investors, Inc. v. Columbia Pictures Int'l, Inc.*, 508 U.S. 49, 60 (1993). There is no

heightened pleading requirement to pursue a claim based on sham litigation. *Honeywell*

*Consumer Prods., Inc. v. Windmere Corp.*, 993 F. Supp. 22, 24 (D. Mass. 1998).

Similar to its approach to the false publicity allegations, Alnylam's challenge to the

sufficiency of Dicerna's sham litigation allegations is an exercise in reading out of the Amended

Complaint allegations that are unequivocally included. Among other relevant allegations

ignored entirely by Alnylam, the Amended Complaint alleges the following:

- Merck, whose trade secrets Alnylam claims to have acquired and form the basis of its State Court Litigation, took no reasonable steps to protect the confidentiality of its RNAi developments, watching scientists terminated in the lead-up to the Alnylam transaction walk out with suitcases of materials, sending additional research-related materials to former scientists after they left, and supporting its former scientists' efforts to land jobs with competitors without raising any concern whether they would continue using the information developed at Merck (AC ¶¶ 33-47);

- Merck actively encouraged its displaced scientists to take information with them to assist in seeking new employment and affirmatively encouraged Dicerna to hire its former scientists. (*Id.* ¶¶ 33, 37-40). Alnylam was aware that Dicerna hired six former Merck scientists who worked in RNAi development, but raised no concern with Dicerna or those former Merck scientists until it came to view Dicerna as a competitive threat (*Id.* ¶¶ 50, 54-55);

13

- Alnylam could easily have determined the steps Merck took, or failed to take, to protect any "trade secrets" in the period leading up to its acquisition, and Alnylam itself failed to take reasonable steps to protect any purported "trade secrets" possessed by Merck's former scientists, because Alnylam primarily valued the Merck patent portfolio and it acquired and it understood that by pursuing patent applications, forgoing trade secret protection for the technology disclosed (*Id.* ¶¶ 47-51);

- Alnylam claimed that certain RNAi technology is an Alnylam trade secret, even though it was aware of public disclosures of those so-called secrets – including in its own patent filings (*Id.* ¶ 46);

- Alnylam alleged that Dicerna could not have made developments in RNAi technology without misappropriating Merck trade secrets, even though Alnylam knew that it made its own independent developments in that technology prior to its acquisition of Merck's technology (*Id.* ¶ 56);

- Alnylam is aware of Merck's former scientists taking materials with them when they left, but has never brought an action against any of them to retrieve proprietary information, or prohibit its use, as it would be expected to do so if it truly believed that information constituted protected "trade secrets."  (*Id.* ¶ 47) Instead, Alnylam only brought its action against Dicerna after coming to believe Dicerna is a competitive threat  (*Id.* ¶ 59);

- Alnylam knows that Dicerna relies on securing partnerships, alliances, and licensing deals with other companies in order to pursue its competitive developments and further knows that the allegations made in the State Court Litigation "would have a severe chilling effect on Dicerna's ability to secure partnerships, alliances or licensing deals" (*Id.* ¶¶ 70-71);

- Alnylam has never sought an injunction or other relief to prevent Dicerna's use of the alleged "trade secrets", which it would be expected to do if it actually believed in the merits of its allegations, instead it has sought to delay and prolong the pendency of the litigation without resolution for as long as possible, and has continued to publicize its original expansive allegations against Dicerna despite having been forced to "narrow[] considerably" its trade secret claims as a result of discovery (*Id.* ¶¶  8, 78-79).

Those allegations are more than sufficient to make out a viable claim of sham litigation.

*See*, *CVD, Inc. v. Raytheon, Co.*, 769 F.2d 842 (1st Cir. 1985) (evidence that defendant was aware that the core information claimed to be trade secrets was in the public domain, that defendant failed to follow procedures for protection of trade secrets and that it threatened litigation after only a cursory investigation, was sufficient to establish an antitrust violation based

on bad faith assertion of trade secrets); *In re Prograf Antitrust Litigation*, 2012 WL 293850 (D. Mass. Feb. 1, 2012) (finding allegations concerning the lack of merit to defendant's petition sufficient to meet the objectively baseless element of sham litigation); *Skinder-Strauss Assocs. v. Mass. Continuing Legal Educ., Inc.*, 870 F. Supp. 8, 10 (D. Mass. 1994) ("Because MCLE's counterclaims allege that the lawsuit filed by Skinder is objectively baseless and conceals an attempt to interfere directly with the business relationships of a competitor, the counterclaims adequately state a claim and should not be dismissed under Fed. R. Civ. P. 12(b)(6)."). *See also Abarca Health, LLC v. PharmPix Corp.*, 915 F. Supp. 2d 210, 216 (D.P.R. 2012) ("The applicability of *Noerr-Pennington*, is a 'highly factual determination[ ] inappropriate for a dismissal motion.'") (quoting *Guimerfe, Inc. v. Perez-Perdomo*, 2009 WL 918933, at *3-*4 (D.P.R. Mar. 31, 2009). Indeed, in applying a similar standard in his Memorandum and Order denying Alnylam's motions to dismiss Dicerna's State Court Litigation Counterclaims, Judge Leibensperger expressly determined "that all of Dicerna's counterclaims are "colorable" and are worth being presented to and considered by the court and jury." (AC ¶ 81.) In reasoning that applies equally to Dicerna's antitrust claim, Judge Leibensperger continued:

> Dicerna's counterclaim alleges facts that, if proved, raise a jury question regarding Alnylam's motivation for commencing this action. Dicerna alleges that Alnylam has alleged trade secrets did not qualify as such because the information was in the public domain. Further the counterclaim alleges that Alnylam either knew that the trade secrets were not protected or recklessly failed to examine whether the trade secrets were in the public domain before commencing this lawsuit. Alnylam allegedly did so to injure Dicerna and to gain a competitive advantage over Dicerna. If these facts are proved, a jury could conclude that Alnylam acted with ulterior motive and did not actually believe it could succeed on its claim of misappropriation of trade secrets.

(*Id*).

Inexplicably, Alnylam does not address any of Dicerna's allegations supporting the sham

allegation claim and purports to rely extensively on its own allegations in the State Court

Litigation complaint, seeking an inference that its own allegations support a finding of good

faith.  (MOL p. 16 Alnylam's approach stands basic principles of Rule 12(b)(6) practice on its

head and must be rejected.  *See, Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 79 (2002) (reversing

dismissal of a 10(b)(5) securities claim on the ground that the district court erred by failing to

give the plaintiff the benefit of all reasonable inferences as it should do on a motion to dismiss,

and instead appearing to draw inferences in favor of defendants).

> 3.    <u>Alnylam Cannot Use The State Court Protective Order As A Shield
>        Against Disclosure Of Facts Learned In Discovery And A Sword To
>        Challenge The Lack Of Disclosure of Those Facts</u>

Alnylam cynically argues that Dicerna's allegations of sham litigation should be deemed

insufficient, because they do not include favorable information learned in the state court

litigation.  (MOL p. 18).  Then, standing basic principles of motion to dismiss practice on their

heads, Alnylam argues that it is entitled to an inference that no facts supporting Dicerna's

allegations of sham litigation have been uncovered in discovery, or otherwise exist.  (*Id.*)

Alnylam is fully aware – but fails to disclose to this Court – that there is a Protective

Order in place in the state court litigation, prohibiting Dicerna from using <u>any</u> of the information

obtained in discovery other than in connection with that litigation.  *See,* Ex. A Stipulated

Protective Order, November 12, 2015.  Alnylam's failure to disclose that prohibition is troubling,

given how aggressively Alnylam has enforced the strict limits of the Protective Order and

successfully blocked the expansion of Dicerna's disclosure authority.  *See* Ex. B, Alnylam's

Opposition to Dicerna's Motion To Permit Disclosure of Alnylam's Trade Secret List dated

September 25, 2017; Ex. C, Court Order dated October 17, 2017; Ex. D, Alnylam

Pharmaceuticals Inc.'s Opposition to Dicerna Pharmaceuticals Inc.'s Motion to Re-Designate

dated November 3, 2016; and Ex. E, Court Order dated December 6, 2016 (entered on December 8, 2016).[1]

The Amended Complaint includes Judge Leibensperger's finding in his Memorandum and Order denying Alnylam's motions to dismiss Dicerna's State Court Litigation Counterclaims, premised on the same allegations of bad faith litigation, that "Alnylam was required to revise [its Trade Secret List] in successive iterations … [a]fter discovery, the list of alleged trade secrets has narrowed considerably."  (AC ¶ 78).  The Amended Complaint further alleges:

> Alnylam's narrowing of its asserted Trade Secret List as noted by Judge Leibensperger reflects Alnylam's begrudging and long delayed recognition that the "extremely long and broad list" on which its Complaint in the State Court Litigation was premised was objectively baseless, claiming as trade secrets information that an objective observer acting in good faith would have known were in the public domain, and could not be proven to be proprietary and confidential to Alnylam. (AC ¶ 79)

Contrary to the inference Alnylam seeks, the Amended Complaint establishes that, Dicerna already has prevailed in forcing the "considerable" withdrawal of overbroad trade secret allegations that Alnylam pursued for years – at great harm to Dicerna's ability to compete – but now can no longer pursue.  The Amended Complaint makes these allegations at the level of detail permitted by the state court Protective Order, and all of the facts establishing that Alnylam's original – and now largely abandoned - trade secret claims were objectively baseless and pursued for an anti-competitive purpose will be presented to this Court once discovery commences here and an applicable protective order permits that disclosure.  Alnylam's misguided attempt to rely on the Protective Order to prohibit Dicerna's disclosure and use of

---

[1]  Alnylam acknowledges that this Court may take judicial notice of the State Court Litigation docket entries, and requests that it do so in connection with other filings. (MOL p. 5, fn. 4.)

information obtained in discovery leading to the withdrawal of a substantial portion of Alnylam's original trade secret claims in the State Court Litigation, and as a sword to strike at the Amended Complaint compliance with that Protective Order, must be rejected.  *See*, *Sony Computer Entertainment Am., Inc. v. NASA Elecs. Corp.*, 249 F.R.D. 378, 383 (S.D. Fla. 2008).

## V.   THIS LITIGATION SHOULD NOT BE STAYED PENDING RESOLUTION OF THE STATE COURT LITIGATION

Alnylam's request, in the alternative, to stay this litigation until completion of the trial in the State Court Litigation should be denied.  Consistent with its effort to convince this Court it should infer that discovery in the State Court Litigation does not support Dicerna's claim of bad faith based on Dicerna's having honored the Protective Order issued in that proceeding, Alnylam's representation that a trial on Alnylam's current trade secret allegations in the state court will fully resolve Dicerna's antitrust claim in this Court ignores Judge Leibensperger's finding that Alnylam's "list of alleged trade secrets has narrowed considerably."  (AC ¶ 81.) Alnylam acknowledges that bad faith, for purposes of Dicerna's antitrust claim is to be assessed at the time Alnylam filed its State Court Litigation.  (MOL p. 16.) As discovery in this action will permit Dicerna to disclose to this Court, the current "considerably" narrowed trade secret list that will be the subject of the trial in the State Court Litigation already establishes the lack of objective merit to Alnylam's original claims and its subjective bad faith in filing and publicizing those grossly overbroad allegations.

Alnylam's request for a stay of this litigation is merely another attempt to avoid being held accountable for the existing evidence of its bad faith litigation and false publicity tactics, and their anti-competitive effects.  Alnylam's request to prolong those effects through an unjustified stay should be denied.

## VI.    CONCLUSION

For the foregoing reasons, Dicerna respectfully requests the Court deny Alnylam's

Motion to Stay Proceedings Pending Resolution of the Underlying State Court Litigation.


Dated:  January 5, 2018                          DICERNA PHARMACEUTICALS, INC.
                                                 By its Attorneys,


                                                 /s/ Steven M. Cowley
                                                 Michael R. Gottfried (BBO # 542156)
                                                 MRGottfried@duanemorris.com
                                                 Vincent L. Capuano (BBO # 5468517)
                                                 VCapuano@duanemorris.com
                                                 Steven M. Cowley (BBO # 554534)
                                                 SMCowley@duanemorris.com
                                                 Gregory S. Bombard, (BBO # 679720)
                                                 gbombard@duanemorris.com
                                                 DUANE MORRIS LLP
                                                 100 High Street, Suite 2400
                                                 Boston, Massachusetts 02110-1724
                                                 Tel: 857.488.4200

                                                 OF COUNSEL:

                                                 Wayne A. Mack
                                                 WAMack@duanemorris.com
                                                 Sean P. McConnell
                                                 SPMcconnell@duanemorris.com
                                                 Duane Morris LLP
                                                 30 South 17th Street
                                                 Philadelphia, PA 19103-4196
                                                 Tel:  215.979.1000

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of electronic filing and paper copies will be sent to those indicated as non-registered participants.

*/s/ Steven M. Cowley*
Steven M. Cowley

DM2\8432244.3